UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                        :

KEVIN DAVIS,                      :      Case No.
                                          :

                  Plaintiff,   :      **CLASS ACTION**
                                          :

           -against-         :
                                          :      **JURY TRIAL DEMANDED**

AVVO, INC.                     :
                                          :

                  Defendant.  :
                                          :
-------------------------------------------------------------x

        Plaintiff Kevin Davis ("Plaintiff") brings this case on behalf of himself and a class of similarly situated individuals against Avvo, Inc. ("Avvo" or "Defendant"). This Complaint is alleged upon information and belief, except as to those allegations which pertain to the named Plaintiff, which are alleged on personal knowledge:

## NATURE OF THE ACTION

        1.      This complaint alleges claims against Avvo for its false or misleading descriptions of fact or representations of fact in commercial advertising or promotion regarding its affiliate relationships with attorneys who subscribe to Avvo's services and regarding the nature of the services and commercial activities of Avvo, in violation of § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and unfair and deceptive trade practice statutes.

        2.      This complaint is brought on behalf of Plaintiff and a class of similarly situated lawyers who practice law in the United States and who have not paid Avvo for advertising or for any other services ("Non-Paying Attorneys").

3.    This complaint seeks injunctive relief to enjoin defendant Avvo from using the false or misleading descriptions and misrepresentations of fact, damages and disgorgement of profits.

4.    In 2007, Avvo launched a website to provide an internet-based for-profit attorney marketing service where prospective clients and consumers could find and vet qualified attorneys.

5.    Avvo's website maintains separate individual webpage profiles for what it represents are all licensed attorneys in the United States without any attorney involvement or consent, purporting to compile relevant information from public sources.

6.    Individual attorney profiles include client reviews, peer reviews and Avvo ratings for prospective clients to choose a lawyer based on what Avvo represents are objective criteria. However, the listings are not objective.

7.    In truth, Avvo collects fees from attorneys who subscribe to Avvo's services ("Paying Attorneys").  Paying Attorneys receive more favorable reviews and ratings from Avvo. Avvo steers prospective clients toward Paying Attorneys, and away from Non-Paying Attorneys.

8.    Avvo does not disclose who is a Paying Attorney or that Paying Attorneys are more highly rated because they make payments to Avvo out of fees collected from persons who purchase legal services through Avvo.

9.    Persons reviewing Avvo's website regarding the purchase of legal services are entitled by law to be informed about Avvo's connections to Paying Attorneys and the fact that Avvo benefits financially if potential clients hire Paying Attorneys.

2

10.     As a result, the class consisting of Plaintiff and all other Non-Paying Attorney

Class Members have been injured as a result of Avvo's undisclosed connections to Paying

Attorneys.

11.     By falsely claiming that Avvo's reviews are determined based on merit and are

unbiased and by concealing the fact that Avvo provides higher ratings in exchange for payment

of a portion of the fees collected, Avvo injures Class Members' reputations, distorts the

marketplace for legal services and deprives Plaintiff and Class Members of significant revenue.

## JURISDICTION AND VENUE

12.     Plaintiff brings this action pursuant to Lanham Act and state unfair and deceptive

trade practice statutes, and seeks to obtain injunctive relief, recover damages, disgorge Avvo's

profits and secure other relief against Avvo for violations of these laws.  Plaintiff and the Class

Members also seek attorneys' fees, costs and other expenses.

13.     The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1338 because it arises under the Lanham Act and under 28 U.S.C. § 1332(d)

because the aggregate amount in controversy exceeds $5 million and at least one Plaintiff or

Class Member is from a state different from Avvo.  The Court has supplemental jurisdiction

pursuant to 28 U.S.C. § 1367.

14.     The Court has in personam jurisdiction over Avvo because Avvo has substantial

contacts with this forum and has caused injury to Plaintiff and Class Members who actively

practice law throughout the United States, including in this district.

15.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 because a

substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

16.    Plaintiff Kevin Davis is a licensed New York attorney who actively practices law in New York and who is domiciled in New Jersey.  Plaintiff does not pay Avvo for advertising or any other related services.

17.    Avvo is a corporation organized under the laws of the state of Washington, with its principal place of business in Seattle, Washington.

## CLASS ACTION ALLEGATIONS

18.    Plaintiff brings this action pursuant Fed. R. Civ. P. 23(a) and 23(b)(2) and (b)(3) and § 43(a) of the Lanham Act as a nationwide class action on behalf of himself and all other Non-Paying Attorneys who practice law in the United States and who have not paid Avvo for advertising or for any other services (the "Nationwide Class").

19.    Excluded from the Nationwide Class are all attorneys who make a timely election to be excluded, the judge assigned to hear this case, attorneys who serve as clerks or assistants of such judge, and any Non-Paying Attorneys who at the time of class certification have settled claims against Avvo asserted in this action.

20.    Plaintiff brings this action on behalf of a sub-class for the state of New York (the "NY Sub-Class"), asserting claims under § 43(a) of the Lanham Act and § 349 of the New York General Business Law, which bars deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state.

21.    At all relevant times, Avvo has engaged in deceptive acts and practices in the conduct of business, trade or commerce and in the furnishing of services that caused injury to Non-Paying Attorneys within the State of New York in violation of N.Y. Gen. Bus. Law § 349.

4

22.     Avvo misrepresented that its ratings of lawyers were based on objective criteria and concealed from New York purchasers of legal services that Avvo was being paid out of their fees for providing improved ratings to Paying Attorneys.  Avvo also failed to disclose that by promoting the sale of legal services and collecting payment Avvo was violating § 495 of the New York Judiciary Law.

23.     As a direct and proximate result of Avvo's misrepresentation and concealment, Plaintiff and members of the NY Sub-Class have been injured in their business and property in that Avvo diverted business from them by means of deceptive acts and practices.

24.     As a direct and proximate result of Avvo's unlawful conduct, Plaintiff and members of the Class have been injured in their business and property in that Avvo diverted business from them by means of such unfair method of competition, unconscionable act or practice in the conduct of trade or commerce.

25.     The members of the Class and the NY Sub-Class are so numerous that joinder of all members is impracticable.  While the exact number of Class Members is unknown to Plaintiff at this time, according to the American Bar Association, there are over 1.3 million attorneys in the United States as of December 31, 2016, and 177,000 attorneys in the New York Sub-Class. *See* American Bar Association National Population Survey, Year 2017.  Based on information Avvo has posted on its website, a majority of licensed attorneys do not participate with or pay Avvo for its marketing and legal services.

26.     Questions of law or fact common to the Class predominate over any questions affecting only individual members, including:

>    a.  Whether Avvo employed deceptive acts and practices against Plaintiff and Class Members;

b. Whether Avvo used, in commercial advertising and promotion, false or misleading descriptions and representations of fact, which misrepresented the nature and qualities of Avvo's commercial activities in promoting and rating the services of attorneys and stated that such ratings were based on objective criteria rather than in consideration of payments made to Avvo by such rated attorneys in the form of forwarding fees or other fee-sharing agreements;

c. Whether Avvo's false or misleading statements and misrepresentations in commercial advertising or promotion were false;

d. Whether Avvo's false or misleading statements and misrepresentations in commercial advertising or promotion were likely to, and did, deceive or confuse purchasers of legal services from attorneys who paid Avvo for endorsements or favorable ratings;

e. Whether Avvo's false or misleading statements and misrepresentations in commercial advertising or promotion were material;

f. Whether Avvo's misrepresentations caused purchasers of legal services to withhold their purchases of legal services from Non-Paying Attorneys and to purchase such services from Paying Attorneys;

g. Whether Avvo's conduct as described herein violated the Lanham Act;

h. Whether Avvo's conduct as described herein violated state law; and

i. Whether Plaintiff and Class Members sustained damages and, if so, the proper measure of damages.

27.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are providers of legal services who compete with attorneys who pay Avvo for endorsements or favorable ratings and who are similarly injured by Avvo's false or misleading descriptions and representations of fact that are complained of herein.

28.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained as counsel attorneys experienced in class and complex litigation.  Plaintiff has no interest antagonistic to or in conflict with those of the Class.

29.    A class action is superior to other available methods for the fair and efficient

adjudication of this controversy for at least the following reasons:

     a.   Members of the Class are unaware of Avvo's misconduct because it was carried out in secrecy;

     b.   The logistics and financial burden of prosecuting an action on an individual basis are so great that an individual has little incentive in prosecuting an individual action;

     c.   When the liability of Avvo has been adjudicated, claims of all Class Members can be determined by the Court;

     d.   This action will cause an orderly and expeditious administration of the Class claims, foster economies of time, effort and expense, and ensure uniformity of decisions; and

     e.   This action presents no difficulties that would impede its management by the Court as a class action.

30.    This action is suitable for certification under Rule 23(b)(2) of the Federal Rules of

Civil Procedure because Avvo has acted or refused to act on grounds generally applicable to the

named Plaintiff and all members of the putative Class, thereby making appropriate final

injunctive relief as described below with respect to the Class as a whole and with respect to the

NY Sub-Class as a whole.

31.    This action is also suitable for certification under Rule 23(b)(3) of the Federal

Rules of Civil Procedure because the common questions predominate over any individual issues,

a class action is superior to any other available means for the fair and efficient adjudication of

this controversy and no unusual difficulties are likely to be encountered in the management of

this class action.

32.    In particular, the damages or other financial detriment suffered by each member

of the Class is relatively small compared to the burden and expense that would be required to

individually litigate their claims against Avvo, so it would be impracticable for the members of the Class to seek redress individually for Avvo's wrongful conduct.  Even if members of the Class could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

## FACTS

### A. **Avvo's Ratings System**

33.    Avvo assigns every lawyer in a jurisdiction an "Avvo rating" on his or her individual attorney profile.  The rating is given to both Paying and Non-Paying Attorneys.

34.    Avvo states that its rating is calculated based on information Avvo collects from lawyer websites and other public sources.  *See* New York State Bar Association Ethics Opinion 1132, ¶ 4 ("N.Y Ethics Op.").

35.    Avvo falsely states that each attorney's rating "is calculated using a mathematical model, and all lawyers are evaluated on the same set of standards.... At Avvo, all lawyers are treated equally…." *Id*.  Avvo misrepresents as a fact that the rating is not affected by whether a lawyer pays Avvo for its services.

36.    Avvo's representation that a rating is calculated mathematically is false because, among other things, a comparison of ratings to the education and experience of a lawyer shows that Paying Attorneys, i.e., attorneys who subscribe to an Avvo service, are rated higher than Non-Paying Attorneys, without regard to qualifications.

37.    Avvo falsely represents it scores all information objectively for its rating, and does not use subjective data because lawyers with modest experience and credentials regularly exceed lawyers with more experience and impressive education and credentials.

38.    The Avvo rating is on a scale from 1 to 10.  Avvo explains on its website, "It's as simple as counting to 10", but Avvo does not disclose its mathematical code or its calculations for attorney ratings, claiming non-disclosure ensures "no one can game the system, boosting their rating through unfair advantage."  *See* https://support.avvo.com/hc/en-us/articles/208478156-What-is-the-Avvo-Rating-.

39.    Some Avvo ads expressly state that Avvo enables a potential client to find "the right" or "best" lawyer, and Avvo's website claims that its ratings enable potential clients to choose the right lawyer for their needs.  N.Y. Ethics Op., ¶ 28.  The Avvo website extols the benefits of being able to work with lawyers highly rated by Avvo:

- "Work with highly rated, local lawyers near you."

- "Search top-rated lawyers near you."

- "We only work with highly qualified attorneys who are licensed to practice in your state."

*Id.*, ¶ 31.

40.    Through these statements and description of its rating system, Avvo represents that a lawyer with a rating of "10" is "superb," and a better lawyer for the client's matter, than a lawyer with a lower rating.  *Id.*, ¶ 31.  In fact, ratings are based on payments to Avvo and ratings given to Non-Paying Attorneys are arbitrary.

B. **Avvo's Business Model**

41.    Avvo creates a profile page whether or not an attorney subscribes to Avvo and Avvo does not charge consumers for visiting Avvo's website or accessing its online directory. Avvo profits by collecting fees from lawyers who join "Avvo Pro," "Avvo Legal Services" and/or "Avvo Advertising" subscription plans.

42.    "Avvo Pro" is a paid subscription service where the profiles of Paying Attorneys receive special treatment like "enhanced visibility", "personalized headlines", and "spotlighting" the best client reviews by promoting them at the top of the Paying Attorney's profile.

43.    "Avvo Advertising" is a service Avvo created specifically to help attorneys gain more visibility within Avvo's website.  Through this service, Avvo offers paid advertising for those searching in a specific geographic area and practice area.  Attorneys who subscribe to "Avvo Advertising" have their ads displayed within the profile pages of Non-Paying Attorneys.

44.    "Avvo Legal Services" is a program where Avvo connects potential clients with attorneys that Avvo purports to be the most qualified.  When the client decides to retain an attorney for the advertised legal services, Avvo collects money for the services upfront via Avvo's website and then passes this money to the selected attorney charging them a referral fee that Avvo keeps for itself.

45.    At the beginning of each month, Avvo pays each attorney who subscribes to its "Legal Services" all of the legal fees generated through Avvo by that attorney in the previous month, and separately charges each attorney a "marketing fee" (i.e., a referral fee) for each legal service the attorney has completed during the prior month.  *Id.*, ¶ 9.

46.    For example, referral fees are generally $30 for a $99 service (33.3%); $50 for a $199 service (25.1%); $80 for a $295 service (27.1%); $125 for a $595 service (21%); $150 for a $495 service (30.3%); and $200 for a $995 service (20%). *Id.*, ¶ 10 n.1.

47.    Ethics opinions from multiple jurisdictions, including the New York ethics opinion cited herein, conclude that lawyers working with Avvo and paying "marketing fees" are engaging in improper fee sharing or paying for recommendations in violation of Rules of Professional Conduct.

48.    That Avvo is collecting and sharing in legal fees is further demonstrated by Avvo's representations to the purchasers of legal services that "We [Avvo] stand behind *our services*" and that "we [Avvo] expect *our clients* to be 100% satisfied…."  (Emphasis added.)

49.    The New York ethics opinion cited herein concludes that a lawyer paying Avvo's referral fees is making an improper payment for a recommendation in violation of Rule 7.2(a) of the New York Rules of Professional Conduct, which provides that "[a] lawyer shall not compensate or give anything of value to a person or organization to recommend or obtain employment by a client, or as a reward for having made a recommendation resulting in employment by a client…."

50.    The N.Y. ethics opinion also concludes that Avvo's relationship with Paying Attorneys creates the impression that Avvo endorses Paying Attorneys, stating:

> [W]e believe the way Avvo describes in its advertising material the ratings of participating lawyers either expressly states or at least implies or creates the reasonable impression that Avvo is 'recommending' those lawyers…. Our conclusion is bolstered by Avvo's satisfaction guarantee, by which the full amount of the client's payment (including Avvo's portion of the fee) is refunded if the client is not satisfied. This guarantee contributes to the impression that Avvo is 'recommending' the lawyers on its service because it stands behind them to the extent of refunding payment if the client is not satisfied.

*Id.*, ¶¶ 32, 34.

**C.  Avvo as an Affiliate and the Regulation of Affiliate Marketing**

51.    Avvo's endorsement and related marketing practices create affiliate relationships between Avvo (the affiliate) and Paying Attorneys (the sellers of legal services), whereby the Paying Attorney rewards Avvo for each client Avvo secures for the Paying Attorney.

52.    Regulators of commerce, most notably the Federal Trade Commission ("FTC"), have made clear that these practices amount to false advertising if they are not effectively and conspicuously disclosed.  Plaintiff relies on FTC guidelines as a basis for asserting his claims under the Lanham Act.

53.    In 2009, the FTC issued its Guides Concerning the Use of Endorsements and Testimonials in Advertising (the "Endorsement Guides").  The Endorsement Guides specifically provide that "[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience), such connection must be fully disclosed."  16 C.F.R. § 255.5.

54.    In 2015, the FTC released a set of answers to frequently asked questions regarding the Endorsement Guides that contain an entire section devoted to affiliate marketing. The section states that, for an affiliate disclosure to be "clear and conspicuous," the reader should be able to "see both the review containing that disclosure and the link at the same time."  *See* https://www.ftc.gov/tips-advice/business-center/guidance/ftcs-endorsement-guides-what-people-are-asking ("FTC Endorsement Guides").  It warns that "if the product review containing the disclosure and the link are separated, readers may lose the connection."  *Id.*  It also makes clear

that "[p]utting disclosures in obscure places—for example, buried on an ABOUT US or GENERAL INFO page…isn't good enough."  *Id.*

55.     The FTC's guidance regarding affiliate marketing and related practices reflects the fundamental legal principle that commercial speech must be true and non-misleading.  As applied to business relationships, this means that endorsers like Avvo must clearly and conspicuously disclose any material connections to sellers that they have.  Avvo has failed to do so.

### D.  Avvo's False and Misleading Practices

56.     Avvo's endorsement and recommendation of Paying Attorneys through its ratings system and money-back guarantees misleadingly implies that its statements of Paying Attorneys are independent, unbiased and informed solely based on objective criteria.

57.     In truth, Paying Attorneys are endorsed and touted as "Pros" and "highly qualified attorneys" by Avvo because that is how Avvo makes money – Avvo markets Paying Lawyers and generates ratings that Avvo uses in the advertising for Paying Lawyers, and "vouches for" each Paying Lawyer's credentials, abilities and competence.  In return, Avvo receives referral and subscription fees.

58.     Avvo's "Pro" subscription plan is its most popular service for Paying Attorneys, which allows Paying Attorneys to revise how consumers perceive them.

59.     Paying Attorneys who subscribe to the "Avvo Pro" subscription plan are bestowed with a bright teal "Pro" badge that is overlaid on top of the attorney's headshot (right at the top of their profile page) to indicate that this attorney is a professional, whereas Plaintiff and other Non-Paying Attorneys who do not have the "Pro" badge are equated with less

professional or less experienced attorneys, who may even be seen as amateurs.  Below is a sample Avvo "Pro" profile:



60.      Only Paying Attorneys receive "Pro" badges and for several years the only mention of what a "Pro" label meant could be found in the filter section of an Avvo "Find a lawyer" search.  A prospective client had to place her mouse cursor over a small "i" icon and an image appeared, stating "Attorneys that are labeled as PRO have verified their information as it appears on Avvo":


[INTENTIONAL LEFT BLANK]


14



But this statement material omitted a critical fact: an attorney designated as "Pro" pays Avvo for that designation.  Nowhere did Avvo disclose that the "Pro" badge was not based on professionalism or legal acumen, but rather based on whether the attorney paid Avvo for the "Pro" designation.

61.     Within the past month, Avvo changed the long-standing description referenced in the screenshot above and added a statement that "Attorneys who are labeled as PRO have subscribed to Avvo services…", but even this disclosure is not clear and conspicuous.  As the FTC has recognized, "[d]isclosures should not be hidden. . . in blocks of text people are not likely to read" or in other "hard to find places," and disclosures are not clear and conspicuous if "other elements in the ad or message obscure or distract from [them]."  *See* FTC Endorsement Guides.

62.     Prior to the recent change noted above, the closest thing to a disclosure of the "Pro" designation can be found through a circuitous route of links by first clicking on the "For

Lawyers" link (even though the potential client is presumably not an attorney) at the footer of

Avvo's home page:



63.     Once a consumer arrives at the "For Lawyers" page, she will have to scroll to the

bottom of the page and click on the "Learn more" link below the "Avvo Pro" header:



64.     After clicking on the "Learn More" link, the consumer is directed to another page

that advertises the "Avvo Pro" subscription plan.  Nowhere does Avvo disclose that the "Pro"

designation is given to any attorney willing to pay the $49.95/month subscription fee:

[INTENTIONAL LEFT BLANK]

16



65.    Even if the substance of the "Avvo Pro" disclosures were sufficient (they are not), the placement of the disclosures is not clear and conspicuous.  In the unlikely event that a potential client encounters Avvo's limited disclosures of its affiliate relationships with Paying Attorneys, the disclosures fail to inform the potential client of Avvo's material connections to Plaintiff's competitors, i.e., Paying Attorneys.

66.     Furthermore, although Avvo states it "spotlights" positive client reviews for "Avvo Pro" attorneys by moving good reviews to the top of Paying Attorney's profile, that fact is not disclosed to consumers who browse "Pro" attorney profiles.

67.    Moreover, Avvo goes beyond just "spotlighting" positive client reviews by removing and/or refusing to post negative client reviews of Paying Attorneys even if those reviews are truthful.  This practice has been complained about by hundreds of former Avvo clients who have attempted to leave feedback about their attorneys on Avvo's website.

68.    A website compiling complaints about Avvo includes the following consumer complaints that are all rated 1 out of 5 stars (the lowest rating):

- "Avvo is a fake…Avvo did not publish my review, claiming that my criticism was personal.  This site is no use at all, protect the lawyers" (11/7/17 client review (1 star)

- "AVVO is a scam!!!...I posted my review of a lawyer and it doesn't post. Avvo sends the message to the lawyer for 'he' can verify my review. So basically Avvo only let's you post what the lawyer wants you to post" (9/28/17 client review – 1 star);

- "What a joke!...They remove negative reviews of their client" (8/13/17 client review – 1 star);

- "Avvo is Useless…I wrote a review about an Attorney [] and they did not accept it..No swears etc..Just a true review of this lawyer who was totally incompetent !..And Avvo also blocked me from their site when I tried to re write my review..Not right...I will let everyone know about it…." (8/5/17 client review – 1 star);

- "Scam…I also had my review turned out by AVVO, don't trust them, they get Attorneys to change or take your real reviews. I am an educator and I wouldn't lie, I'm not an attorney. Don't trust the good reviews, they're not true!!!" (6/27/17 client review – 1 star); and

- "Trash site that removes all negative reviews…AVVO will NEVER approve *any* negative reviews you post about any lawyer. They protect their lawyers as to get more money out of them, so don't expect any REAL or HONEST reviews due to this fact." (5/30/17 client review – 1 star).

## E.  Plaintiff's Damages

69.    Avvo's deceptive and misleading endorsements have caused Plaintiff and the

Class of Non-Paying Attorneys to lose fees and suffer reputational damage.  Avvo's false

endorsements have resulted in financial gains for Avvo.

70.    Because Avvo maintains a prominent position on the Internet, appearing regularly

on the first page of Google searches for attorneys (for example, if a prospective client searches

"top litigation attorney" it yields Avvo's website on the first page with the header "Find the best

Litigation Lawyer in New York, NY – Avvo"), Avvo is positioned to interfere with potential

18

client choices by interposing its own false statements and misleading endorsements who are the "best" and "most qualified" attorneys.

71.     Potential clients have been diverted by Avvo's false and misleading website to hire lawyers who have purchased legal services from Plaintiff's competitors rather than Plaintiff.

72.     Plaintiff and other Non-Paying Attorneys estimate that Avvo's conduct has caused them many millions of dollars in lost legal business, as well as significant reputational harm.

73.     The harm to the business and reputation of Class Members caused by Avvo's conduct is ongoing and continues to this day.

**COUNT ONE**
**VIOLATION OF THE LANHAM ACT – FALSE ADVERTISING**
**(Against Defendant on Behalf of the Class)**

74.     Plaintiff incorporates paragraphs 1 through 73 as if fully set forth herein.

75.      Avvo has made and continues to make false and misleading descriptions of fact and representations of fact in commercial advertising or promotion, implicitly conveying and publishing false and misleading information regarding its affiliate relationships with Paying Attorneys and misrepresenting the nature of the services and commercial activities of Avvo and the attorneys who paid it for endorsements and ratings in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125.

76.     Avvo's materially false and misleading descriptions and representations have appeared widely in interstate commerce, including in website materials and other online communications circulated among each of the fifty states.

19

77.      Avvo's materially false and misleading descriptions and representations are targeted at the market for legal services generally in order to influence purchasers of legal services to purchase from Paying Attorneys.

78.      Avvo's conduct was willful.

79.      Plaintiff and members of the Class have been and are continuing to be damaged by Avvo's unlawful practices.

80.      Avvo's materially false and misleading descriptions and representations deceive Avvo's audience of potential clients seeking legal services.

81.       Plaintiff and other Class Members have been injured in an amount to be determined as a result of Avvo's false and misleading descriptions and representations.

82.      Avvo has received and continues to receive money from subscription, referral and other fees Avvo charges to Paying Attorneys.

83.      Plaintiff and other Class Members will continue to be damaged unless Avvo's conduct is enjoined.  Plaintiff and other Class Members are suffering irreparable injury that cannot be adequately calculated or compensated solely by money damages so that the remedy at law is not adequate.

84.      For the foregoing reasons, Avvo is liable to Plaintiff and other Class Members for actual compensatory damages as a result of Avvo's violations of the Lanham Act in an amount to be proved at trial, as well as for disgorgement of Avvo's profits resulting from the violations of the Lanham Act outlined herein.

85.     Plaintiff and the Class Members also are entitled to injunctive relief, as well as all other remedies available under the Lanham Act, including, without limitation, treble damages, disgorgement of profits, costs and reasonable attorneys' fees.

## COUNT TWO
## VIOLATION OF THE LANHAM ACT – CONTRIBUTORY FALSE ADVERTISING
### (Against Defendant on Behalf of the Class)

86.     Plaintiff incorporates paragraphs 1 through 85 as if fully set forth herein.

87.     Avvo induces Paying Attorneys to engage in false advertising by providing false Avvo ratings and badges to Paying Attorneys and encouraging Paying Attorneys to share their false ratings and badges on Paying Attorney websites and marketing materials.

88.     Avvo knows that the Avvo ratings and badges are not based on objective measures of a lawyer's skill.  Rather, they are based on a pay-to-play scheme between Paying Attorneys and Avvo.

89.     As a result, Paying Attorneys make materially false statements that are likely to cause consumer confusion, mistake or deception as to the quality and skill-set of Paying Attorneys who advertise Avvo ratings and badges on Paying Attorney websites and marketing materials.

90.     Avvo's actions, therefore, cause Paying Attorneys to mislead and harm customers and consumers as well as damage Non-Paying Attorneys' reputation in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

91.      Avvo's acts are undertaken willfully and deliberately and with the intention of causing confusion, mistake or deception.

92.     For the foregoing reasons, Avvo is liable to Plaintiff and other Class Members for actual compensatory damages as a result of Avvo's violations of the Lanham Act in an amount to be proved at trial, as well as for disgorgement of Avvo's profits resulting from the violations of the Lanham Act outlined herein.

93.     Plaintiff and the Class Members also are entitled to injunctive relief, as well as all other remedies available under the Lanham Act, including, without limitation, treble damages, disgorgement of profits, costs and reasonable attorneys' fees.

## COUNT THREE
### VIOLATIONS OF N.Y. GEN. BUS. LAW § 349
### (Against Defendant on Behalf of the NY Sub-Class)

94.     Plaintiff incorporates paragraphs 1 through 93 as if fully set forth herein.

95.     Avvo engages in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq*.

96.     Avvo has made false and/or misleading statements on its websites, expressly and implicitly conveying and publishing false and misleading information regarding its affiliate relationships with Paying Attorneys.

97.     Avvo has failed to sufficiently disclose its affiliate relationships with Paying Attorneys, information that Avvo alone possesses but fails to provide.

98.     Avvo's deceptive acts are directed at consumers because Avvo incorporates them into its individual attorney webpages, which feature false and/or misleading information.

99.     Avvo's deceptive acts are likely to mislead a reasonable consumer acting reasonably under the circumstances.

100.    Avvo's deceptive acts affect the public interest in New York because consumers located in New York have purchased legal services from attorneys paying for Avvo's services on the basis of Avvo's false and/or misleading statements and omissions.

101.    Plaintiff and other class members have suffered injury in an amount to be determined at trial as a result of Avvo's false and misleading statements, by direct diversion of potential clients seeking legal services from Non-Paying Attorneys who do not engage in Avvo's pay-to-play services versus Paying Attorneys who do.

102.    Additionally, Avvo has received revenue in the form of subscription and referral fees from affiliate sales caused by its false and misleading statements, in an amount to be determined at trial.

103.    Plaintiff and other class members continue to be damaged by Avvo's activities and conduct.  Unless Avvo's conduct is enjoined, Plaintiff and other class members will suffer irreparable injury that cannot be adequately calculated or compensated solely by money damages and for which there is no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

1.    Finding Avvo has violated § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and N.Y. Gen. Bus. Law § 349;

2.    Awarding damages in an amount to be determined at trial;

3.    Permanently enjoining Avvo, its agents, servants, affiliates, employees, attorneys and representatives and all those in privity or acting in concert with them and each and all of them, requiring them: (i) to comply fully with all applicable law, rules, regulations, and FTC

guidance concerning any material published, exhibited, or otherwise used publicly by Avvo, including without limitation, the FTC's Guides Concerning Use of Endorsements and Testimonials in Advertising and the FTC's Enforcement Policy Statement on Deceptively Formatted Advertisements; and (ii) to disclose clearly and conspicuously any material connections between any Paying Attorney and Avvo in any and all material published, exhibited, or otherwise used publicly, including without limitation, on (a) Avvo and/or any other website owned or controlled by Avvo; (b) social media accounts owned or controlled by Avvo, including without limitation, YouTube, Twitter, and Facebook accounts; and/or (c) any other advertising, promotion, or publicity owned or controlled by Avvo appearing in any medium;

4.       Awarding pre-judgment and post-judgment interest, to the fullest extent allowable at law or in equity, on all damages;

5.       Awarding costs and disbursements of this action, including attorneys' fees; and

6.       Granting such other and further relief as this Court deems just and proper.

## **<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

Dated: New York, New York
    March 30, 2018                                      STAMELL & SCHAGER, LLP

                                                       By:/s/ Andrew R. Goldenberg
                                                       Jared B. Stamell
                                                       Richard J. Schager, Jr.
                                                       Andrew R. Goldenberg
                                                       1 Liberty Plaza, 35th Floor
                                                       New York, NY  10006
                                                       Telephone: (212) 566-4047
                                                       Facsimile: (212) 566-4061

*Attorneys for Plaintiff*

By:/s/ Jason R. Bleck
1 Liberty Plaza, 35th Floor
New York, NY  10006
Telephone: (212) 566-4047
Facsimile: (212) 566-4061

*Of counsel*